**Harry RITCHIE, Plaintiff–Appellant,**

v.

**Michael WICKSTROM, Theodore W. Koehler, Defendants–Appellees.**

No. 90–2280.

United States Court of Appeals, Sixth Circuit.

Submitted July 16, 1991.

Decided July 23, 1991.

Rehearing and Rehearing En Banc Denied Sept. 24, 1991.

Robert Van Cleef, Becker & Van Cleef, Southfield, Mich., for plaintiff-appellant.

Frank J. Kelley, Julia R. Bell, Office of the Atty. Gen., Corrections Div., Lansing, Mich., for defendants-appellees.

Before GUY and NORRIS, Circuit Judges, and FRIEDMAN, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Harry Ritchie, appeals from a decision by a magistrate judge [1] to grant the defendants' motion for summary judgment. The magistrate judge concluded the defendants' claim that this suit was barred by the eleventh amendment was well-founded.[2]

Upon a review of the record, we reject the magistrate judge's eleventh amendment analysis, but affirm the dismissal on other grounds.

## I.

The facts can be simply stated and essentially are not in dispute. The plaintiff was an inmate at the Marquette state prison, an institution within the correctional system of the State of Michigan. On October 5, 1985, plaintiff's leg was injured when it was caught in the cell door that was being automatically closed by defendant Wickstrom, a correctional officer at the Marquette facility. Although Ritchie was taken to first aid, there appeared to be no injury of consequence. There was no swelling and the skin was not broken. He was seen two days later and no problems were noted. At the end of the month, Ritchie came into the clinic and requested return to work status, indicating that there was nothing wrong with his leg. His request was granted. The following month, however, Ritchie began complaining of left leg pain. Plaintiff was seen by prison medical personnel on October 31 and November 15, 1985. Examination did not re-

veal any deformity or swelling, or a significant limp. There was full range of motion in the knee, but on full extension the knee appeared to snap into place. A meniscal tear was ruled out and notes reflect that an x-ray was to be obtained.

There are no further progress notes until March 15, 1986, when plaintiff again began complaining of left leg discomfort. On March 18, the following notation appears:

Patient is still complaining of pain in his left knee which he has had for some time. He was referred to the orthopedic surgeon several months ago, but apparently has not yet been seen. There has been a backlog of orthopedic patients due to the fact that the orthopedic surgeon broke his ankle, and is only now "catching up." Patient advised that we will make certain that he is definitely seen on the next orthopedic consult visit. We will also renew his Ecotrin to be used prn for pain.

On April 10, Dr. Lyons examined plaintiff. He offered only a recommendation of physical therapy. Plaintiff was subsequently transferred to Jackson state prison where he received an orthopedic consultation. On October 22, 1986, a left knee arthroscopy was performed.

A March 17, 1987, report from a Dr. Mishra states:

This gentleman was injured about 1985 in Marquette when he claims that his leg was slammed against a door. At that time he was scoped and was found to have a possible tear of the anterior cruciate ligament and lateral meniscus with nothing done at that time. He never got better. He still had locking and giving out and it has now come to a point that he cannot even walk without it locking.

Examination shows that the patient has a very tender lateral and medial joint, ante-

---

* The Honorable Bernard A. Friedman, United States District Court for the Eastern District of Michigan, sitting by designation.

1. On April 2, 1990, the parties filed a consent order of reference allowing the magistrate judge to make a final disposition in this case.

2. The magistrate judge, in a report to the district judge, had earlier recommended that a motion for dismissal or summary judgment be denied. The district judge adopted the report and recommendation of the magistrate judge. The eleventh amendment claim was not implicated until a second motion for dismissal or summary judgment was filed by the defendants.

rior is 2+ and Lochman is 2+ positive. Internal rotation causes severe pain. Neurovascular status and x-rays are normal.

He was diagnosed as having a torn lateral meniscus, and Dr. Mishra suggested another arthroscopy with possible removal of the lateral meniscus.

In March 1988, plaintiff filed this lawsuit alleging negligent injury and a 42 U.S.C. § 1983 claim for deliberate infliction of injury and deliberate indifference to medical needs.[3]

## II.

A proper analysis of this case calls into play the interpretation, or perhaps misinterpretation, of several earlier decisions by this court involving eleventh amendment immunity and the differences between a suit against defendants in their "individual capacity" and their "official capacity." Also implicated are the Supreme Court decisions which our court interpreted and applied.

Our analysis begins with *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), which arguably started the confusion in "official capacity" lawsuits. In *Brandon,* a section 1983 action was brought against a police officer for assault. The Director of the Police Department was also sued in his "official capacity." The city was not named as a defendant because, and this is important, the complaint was filed before the decision in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Under *Monroe,* cities could not be defendants in section 1983 actions. Thus, in an effort to get a "deep pocket," the plaintiff in *Brandon* sued the Director in his official capacity. A public official is only a "deep pocket," however, if the governmental unit will pay the judgment. This may or may not occur. In order to provide the plaintiff in *Brandon* with the "deep pocket" he would have had post-*Monell,* the Supreme Court simply declared that a suit against a public official in his "official capacity" is a suit against the governmental unit.

What goes around comes around, however, and the "deep pocket" feeling of euphoria felt by plaintiffs post-*Brandon* was dampened somewhat when the Supreme Court issued its opinion in *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[4]

In *Will,* the Supreme Court determined that states are not "persons" within the meaning of section 1983 and that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against ... the State itself." *Id.* at 71, 109 S.Ct. at 2311 (citations omitted).

Also relevant is the decision in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), which was decided before *Will* but after *Brandon.* In *Graham,* the Court stated:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 [98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611] (1978)....

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation;

---

3. The federal suit was started only after an earlier suit filed in the Michigan Court of Claims was dismissed on the basis of the court having no jurisdiction over the individual defendants.

4. *Will,* of course, is applicable only when a state and its officials are sued.

thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. 473 U.S. at 165–66, 105 S.Ct. at 3105 (citations omitted).

Consideration of two other cases is necessary to complete the legal backdrop. In *Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), the Supreme Court made it clear that pleading labels do not control when the issue is the "capacity" of the defendant:

> The first paragraph of the complaint alleged that the action was brought against the defendants "in their individual and official capacities." There is, however, nothing else in the complaint, or in the record on which the District Court's judgment was based, to support the suggestion that relief was sought against any School Board member in his or her *individual* capacity.

*Id.* at 543, 106 S.Ct. at 1332. The Court went on to disregard the "individual capacity" designation.

In *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936 (6th Cir. 1990), we dismissed claims against individual defendants, holding that the claim was an "official capacity" claim and, thus, was really an attempt to collect money damages against the University of Louisville, which, as a state agency, had eleventh amendment immunity. The decision in *Cowan,* of which I was the author, is being misinterpreted by the defendants. The defendants read the decision much too broadly. The defendants' reading of *Cowan* is exactly what Judge Wellford feared in his prescient concurrence.

■ In order for a person to be sued in a section 1983 action, he must be acting under color of law. Historically, many plaintiffs pleaded the element of "color of law" by stating a defendant was acting in an "official capacity," because it follows *ipso facto* that one acting in an official capacity for a governmental unit is acting under color of law. It is only recently that

this method of pleading the "color of law" element has become a problem. *Cowan* does not stand for the proposition that every time a state official is charged with misconduct while acting within the general ambit of his job title eleventh amendment immunity comes into play. All that was intended in *Cowan* was to indicate that in that case the two individual defendants were merely carrying out state policy and, as such, the suit was no different than if it was brought solely against the state.

■ When the foregoing is used as the analytical tool to evaluate plaintiff's claim in the case at bar, it becomes instantly clear that the suit against corrections officer Wickstrom is an "individual capacity" suit not subject to eleventh amendment protections.[5] Similarly, we believe the suit against Koehler is an "individual capacity" suit, notwithstanding that no "hands on" misconduct is claimed. Koehler is sued as the policy maker for the institution. *See, e.g., Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A judgment against Koehler would not be a judgment against the State, and the State would not be compelled to reimburse Koehler or pay the judgment. If the State should voluntarily pay the judgment or commit itself to pay as a result of a negotiated collective bargaining agreement, this would *not* change the analysis. We thus reverse the decision to dismiss on eleventh amendment grounds. We nonetheless, however, conclude that this case should be dismissed on other grounds. We are free to affirm on an alternate basis. *Herm v. Stafford,* 663 F.2d 669 (6th Cir. 1981).

■ On the state of the record before us, we conclude that the only wrongful acts that possibly could be attributed to defendant Wickstrom are acts of negligence. Negligence will not ground a section 1983 action. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

---

**5.** We do not find this holding to be inconsistent with *Wells v. Brown,* 891 F.2d 591 (6th Cir.

1989), when *Wells* is read against the clear mandate of the relevant Supreme Court decisions.

As to defendant Koehler, the plaintiff has failed to refute properly the affidavits of record, which indicate that Koehler was not responsible directly or indirectly for the medical treatment, or lack thereof, received by Ritchie. We view this as a case in which a plaintiff, having struck out in the state court of claims, now vainly tries to turn his negligence case into a federal constitutional claim. Nothing that occurred here rises to the level of a constitutional violation. We therefore AFFIRM the judgment of the magistrate judge.