Michael LOUKAS, Plaintiffs,

v.

Jerry HOFBAUER, et al., Defendants.

Civ. A. No. 91–CV–40289–FL.

United States District Court,
E.D. Michigan, S.D.

Dec. 10, 1991.

**378**

Michael Loukas, pro se.

Deborah K. Isom, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is the defendant's motion to dismiss and for summary judgment. The plaintiff had until November 5, 1991 to file a response, but to this date, no response has been received by the Court.

For the reasons which follow, the claims against defendants Ricci, Hofbauer and Bolden are DISMISSED. The remaining parties are ORDERED to submit supplemental briefs in accordance with this Opinion.

This case arises out of the classification of the plaintiff to administrative segregation. He alleges irregularities in the Notice of Intent which prompted his classification, and the hearing process by which he was so classified. The Notice of Intent allegedly failed to state the charge against the prisoner, and the charges contained therein did not receive adequate investigation. He claims that he was denied the twenty-four hours' notice of the charge to which he was entitled before his hearing was held, and that the confidential details of the charges against him were not considered by the hearing officer, defendant Joanne Ricci. Finally, the plaintiff alleges that he was kept in temporary segregation without a hearing for a longer period than is permitted under the regulations.

### I.

█ The defendants' first argument is that, based on the Sixth Circuit's decision in *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936 (6th Cir. 1990), the plaintiff's claim is barred by the eleventh amendment. A similar argument was rejected by this Court in *Berryman v. Hofbauer*, 90–CV–40207–FL (Memorandum Opinion and Order, May 28, 1991), and by the Sixth Circuit in *Ritchie v. Wickstrom*, 938 F.2d 689 (6th Cir.1991) in July of this year. "*Cowan* does not stand for the proposition that every time a state official is charged with misconduct while acting within the general ambit of his job title eleventh immunity comes into play." *Ritchie, supra* at 692. For the state's Attorney General's Office to be advancing this argument in October is absurd.

The defendants' brief presses the issue despite the holding in *Ritchie.*

Defendants assert that they were carrying out the dictates of their jobs and *acting* within the scope of their authority, pursuant to policy, and that their

actions were not somehow unofficial. Defendants do not assert that because their actions were taken during their hours of employment that they are automatically entitled to immunity. Rather Defendants assert that because an American state can act only through its employees, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 [114 n. 25], 104 S.Ct. 900 [915 n. 25], 79 L.Ed.2d 67, 114 n. 25 (1983), when those employees are carrying out the duties of the State within the scope of the authority given to them they are acting in an official capacity.

Defendant's Brief in Support of Motion to Dismiss, at 5 (emphasis in original). The brief's focus on the scope of the defendants' authority, and the fact that their actions were taken pursuant to authority, indicates that the defendants are relying upon Judge Guy's ambiguous attempts to breath some life back into the distinction he attempted to draw in *Cowan.* "All that was intended in *Cowan* was to indicate that in that case the two individual defendants were merely carrying out state policy and, as such, the suit was no different than if it was brought solely against the state." *Ritchie, supra* at 692.

Judge Guy's distinction is form without substance because the very defendants before him in *Ritchie* were both carrying out state policy, as well as the dictates of their jobs. Defendant Wickstrom was operating the automatic door in the prison when it closed on the plaintiff's leg. Defendant Koehler was formulating applicable prison policies. The defendants who took these actions, within the scope of their authority, and pursuant to the dictates of their jobs, were not shielded by the eleventh amendment from suit in federal court. There is no reason that the defendants before me in the case at bar should receive such protection either.

The Third Circuit was equally unimpressed by such distinctions in *Melo v. Hafer,* 912 F.2d 628 (3rd Cir.1990), *aff'd,* — U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301

(1991). Although the defendant's power to hire and fire, the actions about which the plaintiffs complained, derived from her position as Auditor General, the court concluded that

It does not follow that every time a public official acts under color of state law the suit must of necessity be one against the official in his or her official capacity. . . .

We reject Hafer's suggestion that a state official can be sued in her personal capacity only if the allegedly unconstitutional actions were not taken in her official capacity. The Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law.

*Melo, supra* at 636–37 (citations omitted). *Accord Farid v. Smith,* 850 F.2d 917, 921 (2nd Cir.1988) ("[E]ven if Smith *were* to prove that he was merely carrying out a policy of the State, he would not be protected from personal liability by the State's immunity under the eleventh amendment.")

In any case, the United States Supreme Court used the issues presented in *Melo* to clarify the official/individual capacity conundrum. In its opinion in *Hafer v. Melo,* — U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the Supreme Court noted that "Hafer seeks to overcome the distinction between official- and personal-capacity suits by arguing that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff." *Id.* at ——, 112 S.Ct. at 363. This is precisely the argument advanced by the defendants here. The Supreme Court rejected the holding in *Cowan,*[1] and made the following observation about Congress' intent in passing § 1983.

Through § 1983, Congress . . . authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation custom, or usage." 42 U.S.C. § 1983.

---

**1.** "Although one Court of Appeals has endorsed this view, see *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936, 942–943 (CA 6

1990), we find it both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decision." *Hafer, supra* at ——, 112 S.Ct. at 363.

The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as Auditor General. We cannot accept the novel proposition that this same official authority insulates Hafer from suit.

*Id.* Finally, the Court held—

that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, *nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.*

*Id.* at ——, 112 S.Ct. at 365 (emphasis added). This Supreme Court opinion elucidates the issue of capacity in eleventh amendment cases in such a manner that devastates the Attorney General's proffered distinction. I trust that I am finally free of it.

## II.

■ The next argument in the defendants' brief seeks dismissal of the claims against defendant Joanne Ricci based on absolute immunity of judicial officers. Hearings Officers acting under MCLA § 791.251–.255 are clearly entitled to such immunity following the Sixth Circuit's affirmation, in *Shelly v. Johnson,* 849 F.2d 228 (6th Cir.1988), of Judge Hillman's decision at the trial court level. *Shelly v. Johnson,* 684 F.Supp. 941 (W.D.Mich.1987). It is not alleged that defendant Ricci was acting beyond the scope of her authority. She is entitled to absolute immunity, and is hereby DISMISSED from this case.

■ Upon a review of the Complaint, and the accompanying statement of facts, the plaintiff has failed to allege any conduct by defendants Hofbauer and Bolden that violates the plaintiff's constitutional rights. The statement of facts merely alleges that Mr. Bolden is aware of the plaintiff's constitutional rights, yet did not act to prevent any violation. The statement also alleges that Mr. Hofbauer classified the plaintiff in administrative segregation pursuant to the Notice of Intent. Even when taken with all of the plaintiff's claims of violation, none of this conduct is violative of the plaintiff's rights. Defendants Hofbauer and Bolden are entitled to dismissal from this action because there is no evidence that they were personally involved in any of the alleged constitutional deprivations.

■ Finally, upon a review of the record, including the exhibits attached to the defendants' brief, and the allegations contained in the Complaint and Statement of Facts attached thereto, the Court concludes that there is no genuine issue of fact as to the substance of most of the plaintiff's claims. The plaintiff did receive adequate notice of the charge necessitating his classification to administrative segregation. Although the charge did not appear on the Notice of Intent, the plaintiff was provided with an explanation of the charge at his hearing, and Hearing Officer Ricci offered the plaintiff an opportunity to postpone the hearing for an additional twenty-four hours to permit the preparation of a response to those charges. He waived that offer, and cannot now claim that he was deprived of his right to notice.

■ The rest of the information leading to the classification was confidential information to which the plaintiff was not entitled. There was no additional investigation to be had, by the plaintiff or the hearing officer, since the classification was based on confidential and sensitive information from state and federal law enforcement officials. The plaintiff had all the information to which he was entitled, and, again, was provided with an additional twenty-four hours to prepare a response to the charges.

The Court is uncertain about the constitutional implications of the delay in the hearing process. Policy Directive BCF–60.01 states that "A prisoner may not be confined in temporary segregation without a hearing for longer than four consecutive business days." The plaintiff was placed in temporary segregation pending hearing on Friday, March 29, 1991 at 3:00 p.m. and remained there until his hearing was held on Thursday April 4th. The defendants'

brief states that the Michigan Department of Corrections (MDOC) "does not begin counting consecutive business days until the first full day after detention in segregation." Defendant's Brief in Support of Motion to Dismiss, at 16.

The defendants claim that the calculation of the days is within the purview of the hearing officer, and beyond judicial review therefore. I do not believe that the hearing officer's decision would be beyond this Court's review if, for instance, the hearing officer only counted Fridays as business days and could thus postpone a hearing for several weeks. I am not satisfied with the defendants' argument concerning the permissibility of the extra day of delay, but without additional briefing, I cannot conclude at this time that the delay amounts to a violation of the regulations or a deprivation of the plaintiff's liberty interests.

### III.

■ The defendants argue that the plaintiff could not be deprived of his liberty interest because adequate postdeprivation remedies are available to redress the deprivation. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Citing state procedures provided by statute, M.C.L. §§ 791.254(2)(c) and 791.255, the defendants argue that the plaintiff's failure to avail himself of these remedies means that no due process deprivation has occurred, and his claim is barred. In *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100, 118 (1990) the Supreme Court extended the *Parratt* rule to cover deprivations of liberty interests as well as property interest. *Zinermon, supra*, 494 U.S. at 132, 110 S.Ct. at 987, 108 L.Ed.2d at 118. Thus, a plaintiff's failure to avail himself of available postdeprivation remedies may, in some cases, defeat a due process claim of deprivation of a liberty interest.

■ The Court analyzed the factors provided in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) to determine when the Constitution requires a state to provide predeprivation process and when postdeprivation remedies are sufficient. Generally, the Constitution requires states to anticipate deprivations of property or liberty interests and provide due process before the deprivation occurs. In some cases, however, it is not necessary or feasible to provide predeprivation process. *Parratt* presented such a situation. "The very nature of a negligent loss of property made it impossible for the State to predict such deprivations and provide predeprivation process." *Zinermon, supra*, 494 U.S. at 129, 110 S.Ct. at 985, 108 L.Ed.2d at 116.

■ Under the *Parratt* rule, then, certain circumstances permit the states to postpone due process until after the deprivation has occurred. Unless a plaintiff has availed himself of available postdeprivation remedies, a constitutional deprivation of his property or liberty interest has not occurred. If, as is the general rule, the Constitution requires the state to provide predeprivation process, and if the plaintiff was not afforded such process before being deprived of his interest, a constitutional violation occurs at the time of the deprivation. In such a case, it is unnecessary that the plaintiff pursue postdeprivation remedies, however available those remedies may be.

"To determine whether ... the *Parratt* rule necessarily precludes § 1983 liability in this case, we must ask whether predeprivation procedural safeguards could address the risk of deprivations of the kind [the plaintiff] alleges." *Zinermon, supra*, 494 U.S. at 132, 110 S.Ct. at 987, 108 L.Ed.2d at 118. In *Zinermon*, no effort was made to ascertain, at the time of admission, the plaintiff's mental capacity to voluntarily authorize admission into a state mental institution. The Supreme Court gave three reasons for deciding that the state should have provided a predeprivation remedy, and that therefore the *Parratt* rule would not apply in that case. *Zinermon, supra*, 494 U.S. at 136–37, 110 S.Ct. at 989–90, 108 L.Ed.2d at 121–22. First, the plaintiff's deprivation was predictable because the state facility's staff should have known that an incompetent person was incapable of giving informed consent to admission to the mental institution. Second, it was not

impossible to provide predeprivation process because the staff could have initiated existing state procedures for determining mental capacity. Third, the staff's conduct could not be characterized as unauthorized "in the sense the term is used in *Parratt* and *Hudson [v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ]." *Zinermon, supra,* 494 U.S. at 138, 110 S.Ct. at 990, 108 L.Ed.2d at 122.

 What is involved in determining the applicability of the *Parratt* rule is an examination of the distinction between the random conduct that was at issue in cases like *Parratt,* where prison officials negligently lost a prisoner's personal property, or *Hudson,* where a prison guard maliciously destroyed the plaintiff's personal property, and the more predictable conduct, which was at issue in *Zinermon,* which can be prevented by predeprivation process. If the deprivation is random, and unpredictable, thereby making predeprivation process impossible, it is enough that a state offer postdeprivation remedies, and a plaintiff's failure to avail himself of those remedies is fatal to his deprivation of liberty or property due process claim. If the deprivation is predictable, the state is expected to anticipate it and provide predeprivation process to protect against the deprivation. The absence of such predeprivation process makes state officials liable when a plaintiff is deprived of a liberty or property interest, and the plaintiff is not foreclosed by the *Parratt* rule from bringing a § 1983 claim to redress that deprivation, even though he has not availed himself of available postdeprivation remedies. *Zinermon, supra,* 494 U.S. at 139, 110 S.Ct. at 990, 108 L.Ed.2d at 122 ("Unlike *Parratt* and *Hudson,* this case does not represent the special instance of the *Mathews* due process analysis where postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged.")

 The analysis performed in *Zinermon* merely provides a framework for examining this distinction. Before concluding that the plaintiff's due process claim is foreclosed by his failure to avail himself of available postdeprivation remedies, this Court must determine whether the state had a duty to provide predeprivation process for the kind of conduct alleged, in this case, to have violated the plaintiff's constitutional rights. To do so, I must consider: 1) the predictability of deprivation; 2) the feasibility of providing predeprivation process; and 3) whether the defendants' conduct was authorized or was a random, negligent or intentional violation of the plaintiff's rights.

Application of the *Zinermon* analysis to this case brings an ambiguous result, but I must conclude that predeprivation process was required by the facts in this case. A state official's failure to commence in a timely fashion a hearing when a prisoner is classified for administrative segregation is not as predictable as the incompetence of a patient from whom an official is seeking informed consent for admission to a state mental institution. Still, it is predictable that prison officials may permit a prisoner to languish in temporary segregation; so predictable that the state has promulgated regulations to limit the prison officials' discretion to do so. It is not impossible to provide predeprivation process here, because the state has already established a hearing procedure to be followed. As in *Zinermon,* the state has a procedure for avoiding the deprivation of the liberty interest: it can provide a hearing within the four day period proscribed by the regulation.

Finally, the prison officials' departure from the regulation's procedures could be seen as random, and therefore unpredictable. The mental hospital staff's failure to initiate competency hearing in *Zinermon* could not be any less random, however. Both situations involve an official's failure to apply state procedure as required. "The deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights ... by an official's abuse of his position.'" *Zinermon, supra,* 494 U.S. at 138, 110 S.Ct. at 990, 108 L.Ed.2d at 122 (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct.

473, 476, 5 L.Ed.2d 492, 497 (1978). The Supreme Court's conclusion that the *Zinermon* defendants' conduct was not random compels a similar conclusion here.

I have a hard time concluding that the conduct in this case is random. Indeed, the defendants' brief argues that their conduct is consistent with the regulation under the MDOC's method of calculating the four day regulatory period. I am merely uncertain whether the prison's method of calculation is constitutionally permissible. In any case, by their own argument, the defendants acted consistently with policy, and not in a random fashion.

For all these reasons, I must conclude that the state should have provided a predeprivation hearing. Indeed, such a hearing was provided for by regulation. In this case, however, they failed to follow their own regulations. The requirement of predeprivation process relieves the plaintiff from the requirements of the *Parratt* rule. He need not avail himself of available postdeprivation remedies before stating a due process cause of action arising out of a deprivation of his liberty interest.

### IV.

The defendants are entitled to summary judgment on all of the plaintiff's claims, except the claim arising from the allegedly delayed hearing. Some of the defendants, however, are dismissed from this case as a result of this motion. Defendant Ricci is DISMISSED from this case because she is entitled to absolute judicial immunity. Defendants Hofbauer and Bolden are DISMISSED as well because the plaintiff has failed to demonstrate their personal involvement in any denial of his constitutional rights.

There is no genuine issue of fact that most of the plaintiff's claims fail to establish a constitutional violation for which this Court can provide relief. The defendants complied with prison policy by providing additional time to prepare for a hearing after the plaintiff was informed of the charges necessitating his classification. They had no duty to provide the plaintiff with additional information about the charges against him, or to investigate them further.

The alleged delay in holding a hearing regarding the classification of the plaintiff to administrative segregation may be a violation of the state's regulations, may be a violation of the Constitution, and therefore may state a cause of action upon which relief may be granted. Such a claim is not defeated, however, by the availability of postdeprivation remedies. The viability of this claim, then, must be the subject of supplemental briefing.

IT IS HEREBY ORDERED that the parties file, within ten days from the entry of this Opinion, supplemental briefs on the constitutional implications of the fact that the plaintiff's hearing was held on Thursday, April 4, 1991 instead of at some earlier time.

SO ORDERED.