**Tyrone v. HARDIN, Plaintiff–Appellee,**

**v.**

**Dennis STRAUB, Defendant–Appellant,**

**Dwayne Sholes and John Doe, # 1–# 11 individually and in their official capacities, jointly and severally, Defendants.**

No. 91–1220.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 17, 1991.

Decided January 27, 1992.

Julie Kunce Field (argued and briefed), Michigan Clinical Law Program, Ann Arbor, Mich., for plaintiff-appellee.

Deborah K. Isom, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen., Corrections Div., Lansing, Mich., for defendant-appellant Dennis Straub.

Before RYAN, Circuit Judge, WELLFORD, Senior Circuit Judge, and HIGGINS, District Judge.*

* The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation.

RYAN, Circuit Judge.

Defendant Dennis Straub appeals from the district court's order denying, in part, Straub's motion for summary judgment in plaintiff Tyrone V. Hardin's 42 U.S.C. § 1983 suit against Straub. Hardin's suit alleges that Straub, a Michigan state prison official, deprived Hardin, an inmate, of his due process rights under the Fourteenth Amendment. The district court denied summary judgment on the ground that the Eleventh Amendment does not bar a suit by a plaintiff against a state official being sued in his individual capacity for allegedly violating plaintiff's civil rights. Straub presents two issues on appeal:

1. Does the Eleventh Amendment bar a claim against a state official in his individual capacity for violating the due process rights of the plaintiff while exercising responsibility pursuant to official position; and

2. Did the district court have jurisdiction in this case to permit the plaintiff to amend his complaint?

We conclude that the district court correctly held that the Eleventh Amendment does not provide Straub a defense to Hardin's suit. We also hold that the district court properly permitted Hardin to amend his complaint.

I.

A.

On October 24, 1980, Hardin, a parole violator, was transferred from the Kent County Jail to the Michigan Department of Corrections Reception and Guidance Center (R & GC) on the grounds of the State Prison of Southern Michigan (SPSM) in Jackson, Michigan. Upon arriving at R & GC, he was assigned "000" segregation or "toplock" status for the duration of his evaluation period. After three weeks of evaluation, he was interviewed by the Classification Committee, and it classified him to administrative segregation at SPSM, known in SPSM as 5–Block. At this time,

Straub was both the Deputy Superintendent and the Classification Director of R & GC, and served on the three-person Classification Committee which assigned plaintiff Hardin to 5–Block.

With the exception of several weeks spent in the Kent County Jail from March through May 1981, Hardin remained in 5–Block, from mid-November 1980 until he was transferred from Jackson to the Marquette Branch Prison on July 15, 1981. Consequently, he was in administrative segregation at Jackson for approximately 180 days.

No hearing was conducted prior to Hardin's initial placement in toplock at R & GC or prior to his classification to 5–Block at SPSM, and no periodic review was conducted of his status during his confinement at SPSM. Hardin complains that this treatment violated the Michigan Administrative Code, which requires that an inmate be afforded an opportunity for a hearing before administrative segregation is imposed and provides for a monthly review of the security status of an inmate in administrative segregation. *See* Mich.Admin.Code R. 791.4405 (1979). Hardin alleges that this violation of the Administrative Code constituted a deprivation of his due process rights.

### B.

Hardin filed his original complaint in 1986. Although initially dismissed on statute of limitations grounds, the United States Supreme Court reversed and ordered that the suit be reinstated. *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Hardin filed his first amended complaint in 1989, suing Straub in his individual capacity for damages, and in his individual and official capacities for injunctive relief. The complaint alleges that Hardin's confinement in administrative segregation violated his rights under the Eighth Amendment and under the due process clause of the Fourteenth Amendment, and that Straub is liable for damages under 42 U.S.C. § 1983. The complaint alleges that Straub acted maliciously toward Hardin in both the initial assignment to toplock upon Hardin's arrival to R & GC and in the subsequent assignment to 5–Block at SPSM. The complaint requests injunctive relief to prevent Hardin's return to administrative segregation without a hearing and requests damages to compensate for his confinement in administrative segregation.

Straub responded by moving for summary judgment and for a protective order staying discovery pending disposition of the summary judgment motion. The motion for summary judgment presented four contentions: 1) Hardin failed to show any direct personal involvement by Straub; 2) Hardin's claims are barred by the Eleventh Amendment; 3) Hardin's claim for injunctive relief is moot; 4) Hardin's claim of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment fails to state a claim upon which relief may be granted. After referring the motions to a magistrate judge for a report and recommendation and taking the magistrate judge's recommendation into consideration, the district court issued its order in January 1991.

The district court rejected in part and accepted in part the first contention of Straub's summary judgment motion, in which Straub argued that he had no personal involvement in the complained of actions. The court held that Straub was not involved in Hardin's initial placement in toplock upon arrival at R & GC. However, the court reached a different conclusion regarding Straub's involvement in Hardin's subsequent classification to 5–Block, deciding that there was a genuine issue of material fact concerning Straub's personal involvement in Hardin's classification.

The district court rejected Hardin's second contention, the Eleventh Amendment immunity argument. The court held that the Eleventh Amendment does not protect Straub, who is being sued in his individual capacity for allegedly violating Hardin's civil rights, because "the complaint presents a claim of deprivation caused by unauthorized acts by defendant as an official's abuse of position, not a deprivation caused by established state procedure."

The district court granted summary judgment for Straub on the other two contentions of his summary judgment motion, the injunctive relief claim and the Eighth Amendment claim. The district court also terminated the protective order staying discovery.

Straub appealed and also moved for a protective order limiting discovery pending his appeal of the denial of summary judgment on the Eleventh Amendment issue. The district court denied the motion, and on March 28, 1991, Straub filed a motion with this court seeking a protective order to stay discovery. By order of May 13, 1991, this court declined to enter the stay.

Following the denial of summary judgment in January 1991, Hardin filed his second amended complaint, adding Dwayne Sholes, Assistant Deputy Warden of SPSM in 1980, and eleven John Doe defendants to his claim.

## II.

### A.

The only claim surviving the district court's order is Hardin's claim for damages against Straub in Straub's individual capacity. The district court denied summary judgment on this claim for two separate reasons: 1) Straub failed to show lack of personal involvement; and 2) the Eleventh Amendment does not bar the claim.

Straub does not specifically argue, in his submissions before this court, that the district court abused its discretion in rejecting his first argument for summary judgment, that Hardin failed to show sufficient personal involvement on the part of Straub. Nevertheless, we will review the district court's ruling on this point to clarify the factual context of this issue before this court. Generally, we review a district court's factual conclusions in denying a summary judgment motion under the abuse of discretion standard. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

■ In his complaint, Hardin alleges that Straub took three distinct actions which denied Hardin his Fourteenth Amendment rights. The first action was the initial assignment of Hardin to toplock upon his arrival at R & GC. The district court granted summary judgment to Straub as to this first action, on the ground that Straub was not personally involved. The district court held: "There is no evidence that defendant was personally involved in this initial placement.... Defendant's assertion that he had no involvement in plaintiff's initial placement is undisputed." Hardin has not appealed this portion of the district court's order. In addition, the record supports the district court's decision. The written procedure of R & GC then in effect, OP–R & GC–30.02, established that residents who experienced difficulties in county jails should be given immediate attention upon arrival to R & GC and may then be segregated. The regulations further established that this determination is the responsibility of either a receiving unit sergeant or a staff member, not the classification director. In his affidavit, Straub specifically noted that he "was not involved in any way in the placement of Hardin in a '000' top-lock cell." We agree with the district court, and hold that Hardin has no claim against Straub based on his initial placement into toplock.

■ The second action that Hardin alleges Straub took was the classification to 5–Block at SPSM, and the third action was the failure to periodically review Hardin's status. The district court grouped these two actions together when it made its finding. The court noted:

A difficult issue presented is whether defendant's participation in the three-member committee recommendation that plaintiff be placed in administrative segregation rises to the level of personal involvement in the conduct plaintiff complains of—that his alleged confinement in administrative segregation for 180 days without any adherence to alleged procedural due process requirements of hearing and review.

The district court then made a specific finding that summary judgment should not be granted to Straub on this basis. It held:

Defendant has not eliminated all genuine issues of material fact as to whether there is sufficient nexus between his participation in the committee decision and the alleged confinement in administrative segregation in SPSM, which rises to the level of personal involvement.... We reject defendant's argument that defendant had no personal involvement because he only participated as a member of the classification committee, which recommended administrative segregation at SPSM. Questions of fact remain regarding the sufficiency of defendant's personal involvement with plaintiff's segregation at SPSM and we deny summary judgment on the issue of personal involvement.

Our review of the record indicates that the two actions were separate from each other, and should have been treated accordingly.

Considering only the initial classification decision, we find no error in the district court's conclusion that Straub failed to show he was not personally involved. The record clearly demonstrates that he was involved. In his affidavit, Straub stated: "I recommended that he be placed in 5–Block administrative segregation at SPSM until such time as he could be reviewed by the Assistant Deputy in charge of Security and Custody at SPSM, Mr. Dwayne Sholes." In addition, a November 14, 1980 addendum that went out under Straub's name noted: "In view of the above mentioned factors, Mr. Tyrone Hardin is being classified to SPSM Maximum to be placed in 5 block until such time as he can be viewed by the Assistant Deputy in charge of Security and Custody, Mr. Dwayne Sholes."

In his affidavit, Straub argues that this recommendation was not binding upon any subsequent classification by the SPSM Security Committee and that he was not responsible for any subsequent classification. Straub also claimed that under Michigan Department of Corrections Rule 791.4405, a prisoner may be held for up to four days without a hearing, and that any hearing due Hardin was not within Straub's jurisdiction.

Rule 791.4405 reads in part as follows:

(2) A resident shall be afforded an opportunity for a hearing pursuant to R 791.3315 before being classified to administrative segregation; however, a resident may be temporarily held in segregation status pending a hearing upon order of the institutional head, or at the resident's request. This temporary period may not exceed 4 weekdays.

The rule allows the classification of a resident to administrative segregation if one of three conditions are fulfilled. Either 1) the resident must receive a hearing, 2) the institutional head must issue an order, or 3) the resident must make a request. Our review of the record indicates that the Classification Committee specifically "classified" Hardin to 5–Block, but did so without fulfilling any of the three conditions. The record also demonstrates that Straub had considerable involvement in this decision: he was a member of the committee, he served as classification director, and the addendum went out under his name. We conclude that the record supports the district court's holding that there is a genuine issue of material fact as to whether Straub's personal involvement in the classification decision is sufficient to create liability for violating Hardin's due process rights.

■ The third "action" attributed to Straub is his alleged failure to review Hardin's status. Although the district court did not make a specific finding as to Straub's personal involvement in this denial, our review of the record indicates that Straub had no personal involvement in the denial of review. To the extent that the district court may be construed as permitting Hardin to claim that Straub is liable for the lack of periodic review, we find that the district court abused its discretion in failing to find that Straub was not involved. Nothing in the record demonstrates that Straub possessed any authority to review Hardin's continued classification to 5–Block at SPSM. Straub was the Classification Director and Deputy Superin-

tendent of R & GC, not SPSM. Straub stated in his affidavit: "Upon his transfer to SPSM Mr. Hardin was no longer within my jurisdiction and authority." In the Classification Committee addendum, Straub specifically noted that the classification the committee gave Hardin would last until a review by Sholes, Straub's counterpart at SPSM. Further, Hardin has failed to come forward with any facts indicating that Straub was involved in decisions made after Hardin was transferred to SPSM. We hold that Straub was not personally involved in the treatment Hardin received after his classification to SPSM.[1]

In summary, we conclude that the only remaining claim Hardin has against Straub is based upon Straub's involvement in the decision of the Classification Committee to classify Hardin to 5–Block at SPSM.

### B.

■ We now analyze Straub's Eleventh Amendment immunity argument. He assigns error to the district court's decision that Hardin's suit is not barred by the Eleventh Amendment.

As noted above, the general standard of review for a district court's denial of a summary judgment motion is abuse of discretion. In this case, however, the district court denied summary judgment not solely because a material issue of fact exists; rather, the court's denial was based in part upon its determination that the Eleventh Amendment did not bar the suit. This is thus a mixed question of fact and law, and the standard of review is de novo. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989).

Hardin bases his claim on 42 U.S.C. § 1983, which provides for a private right of action against any person who, under color of state law, violates another person's federal rights. The relevant language reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983.

The Supreme Court has held:

> It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibility pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255–56, 101 L.Ed.2d 40 (1988) (citations omitted).

Section 1983 suits may be maintained against a defendant in both his official and personal (or individual) capacities. The difference between the two types of suits has been the subject of three Supreme Court decisions in recent years. In *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the Supreme Court explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."

(Citations omitted) (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978)). The Court continued, describing the personal capacity suit:

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right....

---

1. This fact has apparently occurred to Hardin as well. In January 1991, after the district court denied summary judgment, Hardin filed a second amended complaint, adding Dwayne

Sholes, then Assistant Deputy Warden at SPSM, and 11 John Doe defendants, officers of SPSM in 1980.

A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him.

*Id.,* 473 U.S. at 166, 167–68, 105 S.Ct. at 3105, 3106 (emphasis in original).

In *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court refined its analysis of section 1983 actions, but did not change the law relating to personal-capacity suits. The plaintiff sued the state police and also the state police director, in his official capacity, in state court. The plaintiff alleged that they violated his rights under the United States and Michigan Constitutions in denying him a promotion. The Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71, 109 S.Ct. at 2312. The Court reasoned that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id. Will* addressed section 1983 suits against state officials in their official capacities and did not alter the previous holding in *Graham* that section 1983 actions can be maintained against state officials for retroactive relief, i.e. damages, if the officials are sued in their personal capacities.

Most recently, the Court considered the question in *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Defendant Hafer was the recently elected Auditor General of Pennsylvania. Shortly after her election, she dismissed 18 employees, including plaintiff Melo, on the basis that they bought their jobs. The plaintiffs brought suit under section 1983, seeking monetary damages. The Court held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id.* 112 S.Ct. at 365.

In reaching this conclusion, the Court took the opportunity to analyze the precedent on this point. The Court noted:

Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law.... While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

*Id.* at 362 (citations omitted). The Court reasoned:

State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.* (citation omitted).

This very recent holding from the Supreme Court makes it unnecessary for us to review several recent decisions of this circuit on the relation between Eleventh Amendment immunity and personal-capacity suits. One decision from this court is, however, still relevant to our analysis. In *Wells v. Brown,* 891 F.2d 591 (6th Cir. 1989), this court faced a section 1983 action by inmates alleging that Michigan prison officials failed to provide a timely hearing after their transfer into solitary confinement. In *Wells,* the court established the requirement that if plaintiffs seek damages under section 1983, they must "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Id.* at 592. In *Hafer,* the Court noted the practice of this circuit, but did not review it. *Hafer,* 112 S.Ct. at 361 n. *.

### C.

■ Applying the law to this case, the threshold inquiry is whether Hardin ful-

filled the requirement, mandated by *Wells*, that his complaint clearly claim against the defendant in his individual capacity. The complaint does so, stating: "Defendant Straub is being sued in his individual capacity on the plaintiff's claims for damages, and both in his individual and his official capacity on the plaintiff's claims for injunctive relief."

█ The next and more important issue is whether the Eleventh Amendment protects Straub from individual liability resulting from actions taken in his capacity as a prison official. Straub argues that when he made the recommendation to assign Hardin to 5–Block, he was exercising his responsibilities pursuant to his position as a classification director. Straub argues:

> Here, Plaintiff purports to sue Defendant in his "individual" capacity, however, he has failed to make any showing to substantiate that the Defendant was acting in other than his official capacity. A complaint which makes no showing that the complained of activity is other than that which the official is required to undertake in the pursuit of the State's business, is in reality one against the official in his official capacity and, therefore, against the State.

Straub contends that since the suit is in reality against the state, the Eleventh Amendment applies and shields the official.

Straub relies on *Cowan v. University of Louisville Sch. of Medicine*, 900 F.2d 936 (6th Cir.1990). Part of plaintiff Cowan's suit was a section 1983 claim against two officials of the medical school who allegedly deprived the plaintiff of his property interest in his enrollment in medical school. This court held:

> [W]e see no evidence whatsoever that [defendants] were acting in anything other than their official capacities, and therefore are unwilling to engage in a review of the process accorded plaintiff in his dismissal from medical school. To do so would be to, in effect, entertain plaintiff's claim against the University of Louisville—a task which the eleventh amendment, and the principles of sovereign immunity it implies, removes from our jurisdiction.

*Id.* at 942–43. Straub seems to construe this holding as meaning that if his actions were taken as part of his job, then they were taken in his official capacity and that Eleventh Amendment immunity applies.

In *Hafer*, the defendant asserted an argument almost identical to Straub's. As explained by the Court:

> Hafer seeks to overcome the distinction between official- and personal-capacity suits by arguing that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff. Under *Will*, she asserts, state officials may not be held liable in their personal capacity for actions they take in their official capacity.

*Id.,* 112 S.Ct. at 363.[2] The Court flatly rejected this argument: "The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as Auditor General. We cannot accept the novel proposition that this same official authority insulates Hafer from suit." *Id.*

In light of *Hafer*, Straub's statement of the law is incorrect. The Court clearly held that state officers are not "absolutely immune from personal liability under § 1983 solely by virtue of the 'official' na-

---

**2.** The Court continued, noting: "Although one Court of Appeals has endorsed this view, see *Cowan* [, 900 F.2d at 942–43], we find it both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decisions." *Hafer*, 112 S.Ct. at 363.

We believe that by focusing narrowly on *Cowan*, the Court overlooked the actual law of this circuit as established in a later decision. We clarified our interpretation of Eleventh Amendment immunity in *Ritchie v. Wickstrom*, 938

F.2d 689 (6th Cir.1991). This decision clearly stated that "*Cowan* does not stand for the proposition that every time a state official is charged with misconduct while acting within the general ambit of his job title eleventh amendment immunity comes into play." *Id.* at 692. *Ritchie* demonstrates that the law of this circuit was consistent with the interpretation of Eleventh Amendment immunity adopted by the Court in *Hafer*.

ture of their acts." *Id.* at 365. Hardin is not required to prove that Straub acted outside the scope of his authority. Rather, all Hardin must prove is that Straub acted in his position as a state official. At that point, Straub can properly advance not the defense of Eleventh Amendment immunity but rather the defense of qualified immunity.

Hardin, as the party opposing a summary judgment motion, is required by Federal Rule of Civil Procedure 56(e) to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As noted above, the district court found that Hardin met this burden because the complaint presents a claim of deprivation of due process rights caused by unauthorized acts as an official's abuse of position. Michigan Department of Corrections Rule 791.4405 requires an initial hearing before a prisoner is classified to administrative segregation and the evidence revealed thus far indicates that defendant did not provide a hearing to Hardin. We agree with the district court that Eleventh Amendment immunity does not apply to protect Straub from liability.

### III.

Straub also argues that the district court lacked the authority to permit Hardin to amend his complaint to add additional defendants. Straub's argument on this point assumes that the district court should have granted summary judgment for him on the Eleventh Amendment issue. Because we hold that the district court properly decided the Eleventh Amendment issue, we also affirm the district court's decision allowing Hardin to amend his complaint.

### IV.

In summary, we conclude that the district court correctly held that the Eleventh Amendment does not protect Straub from liability for his role in the initial classification decision. However, to the extent that the district court's judgment permits Straub to be held liable for the treatment Hardin received after his classification to 5–Block at SPSM, the judgment is in error.

Accordingly, for the reasons stated, the decision of the district court is AFFIRMED in part and REVERSED in part. The cause is REMANDED for further proceedings.

WELLFORD, Senior Circuit Judge, concurring.

I concur in Judge Ryan's careful analysis of the issues in this complex and long-extended case. I write separately, however, to emphasize that the single issue remanded—the claimed periodical involvement and wrongful classification decision affecting Hardin—is a very close question for me. This decision essentially was a committee decision, not a personal decision, by Straub. Unless Hardin can show that other committee members routinely deferred to Straub, effectually abandoned their individual decisionmaking responsibility as committee members, or that Straub wrongfully sought to influence them with some personal animus against Hardin, I would find no due process cause of action established against defendant Straub.