## HARDIN v. STRAUB

No. 87–7023.   Argued March 22, 1989—Decided May 22, 1989

STEVENS, J., delivered the opinion for a unanimous Court.

*Douglas R. Mullkoff,* by appointment of the Court, 488 U. S. 953, argued the cause for petitioner.   With him on the briefs were *Paul D. Reingold* and *Robert F. Gillett.*

*Louis J. Caruso,* Solicitor General of Michigan, argued the cause for respondent.   With him on the brief were *Frank J. Kelley,* Attorney General, and *James L. Stropkai,* Assistant Attorney General.

JUSTICE STEVENS delivered the opinion of the Court.

This case presents the question whether a federal court applying a state statute of limitations to an inmate's federal civil rights action should give effect to the State's provision tolling the limitations period for prisoners.

Petitioner is incarcerated in a Michigan state prison. In 1986 he filed a *pro se* complaint pursuant to 42 U. S. C. § 1983, alleging that for approximately 180 days in 1980 and 1981 he had been held in solitary confinement in violation of his federal constitutional rights.[1] The District Court *sua sponte* dismissed the complaint because it had been filed after the expiration of Michigan's 3-year statutory limitations period for personal injury actions. The Court of Appeals affirmed. 836 F. 2d 549 (CA6 1987). Following its 3-day-old decision in *Higley* v. *Michigan Department of Corrections*, 835 F. 2d 623 (CA6 1987), the court refused to apply a Michigan statute that suspends limitations periods for persons under a legal disability until one year after the disability has been removed. Because that holding appeared to conflict with our decision in *Board of Regents, University of New York* v. *Tomanio*, 446 U. S. 478 (1980), we granted certiorari.[2] 488 U. S. 887 (1988). We now reverse.

---

[1] The complaint alleged that petitioner had never received a hearing on his detention, even though an administrative regulation provided:

"'A resident shall be afforded an opportunity for a hearing . . . before being classified to administrative segergation (sic); however, a resident may be temporarily held in segregation status pending a hearing upon order of the institution head, or at the residents' *[sic]* request. This period may not exceed four (4) weekdays.'" Michigan Department of Corrections Administrative Rule 791.4405, as quoted in App. 7.

Petitioner contends that the detention without a hearing violated the Eighth and Fourteenth Amendments to the Federal Constitution. *Id.*, at 8.

[2] Since *Tomanio* was decided, other Courts of Appeals considering the timeliness of inmates' § 1983 actions regularly have applied States' tolling provisions to statutory limitations periods. See, *e. g.*, *Hughes* v. *Sheriff of Fall River County Jail*, 814 F. 2d 532 (CA8) (despite South Dakota statute's express exclusion of federal civil rights suits, holds plaintiff en-

In enacting 42 U. S. C. § 1988 Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law.* See *Burnett* v. *Grattan*, 468 U. S. 42, 47–48 (1984). Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *Id.*, at 49; *Chardon* v. *Fumero Soto*, 462 U. S. 650, 655–656 (1983); *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 464 (1975). This tradition of borrowing analogous limitations statutes, cf. *O'Sullivan* v. *Felix*, 233 U. S. 318 (1914), is based on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Wilson* v. *Garcia*,

titled to benefit of State's tolling provision), appeal dism'd, 484 U. S. 802 (1987); *Bailey* v. *Faulkner*, 765 F. 2d 102 (CA7 1985) (applying *Tomanio*, holds Indiana tolling statute not inconsistent with § 1983's policies, though "hopelessly archaic" given inmates' access to federal courts); *Whitson* v. *Baker*, 755 F. 2d 1406 (CA11 1985) *(per curiam)* (affirms State Supreme Court opinion interpreting Alabama statute to toll limitations period for convicted prisoners, despite state court's doubt that provision necessary); *Stephan* v. *Dowdle*, 733 F. 2d 642 (CA9 1984) (mentioning *Tomanio* and state-court interpretation of state law, overrules Circuit precedent and holds Arizona's tolling provision applies to inmates' actions pursuant to § 1983); *Turner* v. *Evans*, 721 F. 2d 341 (CA11 1983) *(per curiam)* (without discussing *Tomanio*, applies Georgia tolling provision); *May* v. *Enomoto*, 633 F. 2d 164 (CA9 1980) (citing pre-*Tomanio* Circuit precedent, gives effect to California's tolling statute); *Miller* v. *Smith*, 625 F. 2d 43 (CA5 1980) *(per curiam)* (in light of *Tomanio*, reverses earlier ruling in same case and holds Texas' tolling statute applies to prisoner's civil rights suit); *Brown* v. *Bigger*, 622 F. 2d 1025 (CA10 1980) *(per curiam)* (without mentioning *Tomanio* applies Kansas tolling provision to inmate's § 1983 suit).

*Section 1988 provides that in the event a federal civil rights statute is "deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

471 U. S. 261, 271 (1985).[4] "In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Johnson, supra,* at 464. Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue. See, *e. g., Wilson, supra,* at 269; *Chardon, supra,* at 657.

These principles were invoked in *Board of Regents, University of New York* v. *Tomanio, supra,* to review a contention that a § 1983 action was barred by New York's 3-year limitations statute. The District Court and the Court of Appeals had rejected the defense by relying on a "federal tolling rule" not contained among the tolling provisions the state legislature had codified with its limitations periods. *Id.,* at 482, 486. This Court reversed. Limitations periods in § 1983 suits are to be determined by reference to the appropriate "state statute of limitations and the coordinate tolling rules"; New York's legislative choices in this regard were therefore "binding rules of law." *Id.,* at 484. Since the State's rules did not defeat either § 1983's chief goals of compensation and deterrence[5] or its subsidiary goals of uniformity and federal-

---

[4] Cf. *Chardon* v. *Fumero Soto,* 462 U. S. 650, 662 (1983) ("Until Congress enacts a federal statute of limitations to govern § 1983 litigation, comparable to the statute it ultimately enacted to solve the analogous problems presented by borrowing state law in federal antitrust litigation, federal courts must continue the practice of 'limitations borrowing' outlined in *Tomanio*") (footnote omitted).

[5] We reiterated just last Term that

"'the central objective of the Reconstruction-Era civil rights statutes . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.' *Burnett* v. *Grattan,* 468 U. S. 42, 55 (1984). Thus, § 1983 provides 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation,' *Mitchum* v. *Foster,* 407 U. S. 225, 239 (1972), and is to be accorded 'a sweep as broad as its language.' *United States* v. *Price,* 383 U. S. 787, 801 (1966)." *Felder* v. *Casey,* 487 U. S. 131, 139 (1988).

ism, the Court held that Tomanio's suit was time barred. *Id.*, at 488–492.

It is undisputed that the limitations period applicable to this case is three years, as established in Michigan's statute governing personal injury actions.[6]  See *Owens* v. *Okure*, 488 U. S. 235 (1989); *Wilson* v. *Garcia, supra.*  Since 1846, however, the Michigan Legislature has enacted provisions tolling the onset of limitations periods for prisoners and others suffering from legal disabilities.[7]  The contemporary counterpart provides:

> "[I]f the person first entitled to make an entry or bring an action is under 18 years of age, insane, or imprisoned at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run."  Mich. Comp. Laws Ann. § 600.5851(1) (1987).[8]

---

[6] The pertinent Michigan limitations provision states:

"The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property."  Mich. Comp. Laws Ann. § 600.5805(8) (1987).

[7] Limitations periods applicable to various "personal actions" did not begin accruing for "any person . . . within the age of twenty-one years, or a married woman, insane, imprisoned in the state prison, or absent from the United States" until "after the disability shall be removed."  Mich. Rev. Stat., Tit. 26, ch. 140, § 6 (1846).  Similar tolling provisions protected "disabled" defendants in ejectment suits and plaintiffs in all real property actions.  *Id.*, Tit. 23, ch. 108, § 39; *id.*, Tit. 26, ch. 139, § 5.

[8] Other States currently allowing some tolling of the limitations period for prisoners' lawsuits include: Ala. Code § 6–2–8 (1975); Ark. Code Ann. § 16–56–116 (1987) (if "imprisoned beyond the limits of the state"); Cal. Civ. Proc. Code Ann. § 352 (West Supp. 1989); Haw. Rev. Stat. § 657–13 (1985) (does not apply to "actions against the sheriff, chief of police, or other officers"); Idaho Code § 5–230 (Supp. 1988); Ill. Rev. Stat., ch. 110, ¶ 13–211 (1987) (excludes claims "against the Illinois Department of Corrections or any past or present employee or official of the Department of Corrections"); Kan. Stat. Ann. § 60–515 (1983) (inapplicable to prisoner who "has

Having passed this statute in 1961,[9] the Michigan Legislature revised it in 1972 without altering its effect on prisoners' lawsuits. A legislative committee recognized:

> "'[E]ven prisoners can bring civil actions, though they may not be allowed to be personally present, so it is not as necessary to provide long periods after the removal of the disability in which to sue as it was in the past when these disabilities were considerably more real. Nevertheless, it was considered better to allow a short period after the termination of the disability in which the person under the disability could bring an action.'" *Hawkins* v. *Justin,* 109 Mich. App. 743, 748, 311 N. W. 2d 465, 467 (1981) *(per curiam),* quoting committee comment following Mich. Comp. Laws Ann. § 600.5851, p. 914 (1968).

Likewise, 1986 amendments to the provision did not affect its applicability to prison inmates. See historical note following Mich. Comp. Laws Ann. § 600.5851, p. 540 (1987).

In *Hawkins* v. *Justin, supra,* the Michigan Court of Appeals employed § 600.5851 to toll a state-law libel action by a plaintiff who was incarcerated in a state correctional institution. "[T]he purpose of the statute is to provide prisoners with additional time to assert their legal rights," the state court concluded, "and this purpose could reasonably be based upon the fact that prisoners have restricted access to the judicial system due to their confinement." *Id.,* at 748–749, 311 N. W. 2d, at 467.

---

access to the court for purposes of bringing an action"); Me. Rev. Stat. Ann., Tit. 14, § 853 (Supp. 1988); Minn. Stat. § 541.15 (1988); Mo. Rev. Stat. § 516.170 (1986); Mont. Code Ann. § 27–2–401 (1987); Neb. Rev. Stat. § 25–213 (1985); N. D. Cent. Code § 28–01–25 (Supp. 1987); Ohio Rev. Code Ann. § 2305.16 (1981); Ore. Rev. Stat. § 12.160 (1987); R. I. Gen. Laws § 9–1–19 (Supp. 1988); S. C. Code § 15–3–40 (Supp. 1988); Vt. Stat. Ann., Tit. 12, § 551 (Supp. 1988); Va. Code § 8.01–229 (Supp. 1988) (limited to actions by "convict . . . against his committee"); Wash. Rev. Code § 4.16.190 (1987); Wis. Stat. § 893.16 (1985–1986). Accord, D. C. Code § 12–302 (1981).

[9] 1961 Mich. Pub. Acts, No. 236, § 5851 (effective Jan. 1, 1963).

The Court of Appeals for the Sixth Circuit nonetheless refused to apply the tolling provision to inmates' § 1983 suits in this case and in *Higley* v. *Michigan Department of Corrections*, 835 F. 2d 623 (1987). Although it recognized in *Higley* that it was "obligated to apply state tolling statutes to § 1983 actions, as long as the result is not inconsistent with federal law or policy," *id.*, at 624, the court held that "application of a lengthy tolling period is clearly counterproductive to sound federal policy in attempting to deal with § 1983 claims as promptly as practicable," *id.*, at 626–627.[10] Tolling is neither inconsistent with nor required by § 1983's goal of compensating persons whose constitutional rights have been violated, the court stated. Its result thus turned on two other interests, which it discussed in tandem: the settled § 1983 policy of deterring officials' unconstitutional behavior and a novel "rehabilitative function [of] providing a 'safety valve' for prisoner grievances."[11] *Id.*, at 626. Concluding that quick dis-

___

[10] There is, of course, a federal interest in disposing of all litigation in the federal courts as expeditiously as possible. But the interest in prompt resolution of disputes is vindicated by all statutes of limitations and always must be balanced against the countervailing interest in allowing valid claims to be determined on their merits. Although there is no reason why Congress could not strike that balance in § 1983 cases by enacting a federal statute of limitations, it has not done so. Rather, at least since 1914, see *O'Sullivan* v. *Felix*, 233 U. S. 318, it has tacitly approved of the practice of relying on state legislatures to balance these conflicting interests. Thus, the interest in prompt adjudication cannot properly be characterized as a separate interest that is "inconsistent" with Michigan's tolling provision; rather, it is one of the interests that Michigan has weighed in arriving at the limitations policy that federal courts must borrow.

[11] The Court of Appeals derived this function from the following commentary by a District Court:

"We cannot help but believe that, in order to effect the rehabilitative purpose described above, as well as to deter prison officials from misconduct, quick resolution of disputes is vital. Promptness is even more important, we think, when a prisoner is complaining that his current incarcerators are violating, or have violated, his civil rights. To allow a prisoner one year after his release to bring his section 1983 suit neither would effect deterrence as to the alleged offender, nor rehabilitation as to the alleged

position of § 1983 suits advances these latter policies, the court held that Michigan's tolling law is inconsistent with federal law and declined to apply it.

We do not agree with the Court of Appeals. A State's decision to toll the statute of limitations during the inmate's disability does not frustrate § 1983's compensation goal. Rather, it enhances the inmate's ability to bring suit and recover damages for injuries.[12] Nor does the State's decision to toll its statute of limitations hinder § 1983's deterrence interest. In the event an official's misconduct is ongoing, the plaintiff will have an interest in enjoining it; thus, the time during which the official will unknowingly violate the Constitution may well be short. The State also may have decided that if the official knows an act is unconstitutional, the risk that he or she might be haled into court indefinitely is more likely to check misbehavior than the knowledge that he or she might escape a challenge to that conduct within a brief period of time. The Court of Appeals may have overlooked this point in *Higley* because of its unfortunate intermeshing of § 1983's deterrence function with a dubious "rehabilitative function."[13]

---

victim. Thus, so long as the state system erects no barriers to the federal courts, we regard application of the state disability tolling statute to be 'inconsistent' with federal law." *Vargas* v. *Jago*, 636 F. Supp. 425, 429 (SD Ohio 1986), quoted in *Higley* v. *Michigan Department of Corrections*, 835 F. 2d, at 626.

[12] While recognizing that Michigan's open-ended tolling provision occasionally may let an inmate who has been incarcerated for a long term file a complaint based on antiquated events, see Brief for Respondent 14, we doubt that this will occur frequently. The passage of time—during which memories may dim, witnesses depart, and evidence disappear—is not necessarily an advantage to the plaintiff. For it is the plaintiff who shoulders the burden of proof, and there is a vast difference between preserving the right to file a complaint and convincing a trier of fact that the complaint's allegations are true.

[13] The notion that there is a *federal* "rehabilitative" interest in having unmeritorious claims brought to the attention of federal judges simply as a means of reducing tension within the prison is meritless.

As the Sixth Circuit pointed out, *ibid.*, many prisoners are willing and able to file § 1983 suits while in custody. Thus, a State reasonably could decide that there is no need to enact a tolling statute applicable to such suits. Alternatively, a State reasonably might conclude that some inmates may be loathe to bring suit against adversaries to whose daily supervision and control they remain subject, or that inmates who do file may not have a fair opportunity to establish the validity of their allegations while they are confined. The Michigan tolling statute reflects a legislative decision to lessen any such difficulties by extending the time in which prisoners may seek recovery for constitutional injuries. Such a statute is consistent with § 1983's remedial purpose.[14]

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[14] In *Wilson* v. *Garcia*, 471 U. S. 261, 275 (1985), we also considered "federal interests in uniformity, certainty, and the minimization of unnecessary litigation" in holding that a State's statute of limitations for personal injury actions should be borrowed in all § 1983 cases. Respondent contends that these interests weigh against application of Michigan's tolling provision. Brief for Respondent 22–27. We disagree. Those interests are more pertinent to determining which state laws are appropriate than whether application of those laws fosters the policies of § 1983. Cf. *Chardon*, 462 U. S., at 657 (In *Board of Regents, University of New York* v. *Tomanio*, 446 U. S. 478 (1980), the Court "specifically rejected the argument that the federal interest in uniformity justified displacement of state tolling rules").