Michael CARTER, Plaintiff–Appellant,

v.

UNIVERSITY OF CONNECTICUT,
Defendant–Appellee.

No. 06–3951–cv.

United States Court of Appeals,
Second Circuit.

Feb. 15, 2008.

Marc L. Glenn (Law Office of W. Martyn Philpot, Jr., LLC), New Haven, CT, for Plaintiff–Appellant.

Rosemary McGovern, Assistant Attorney General for Richard Blumenthal, Attorney General, Hartford, CT, for Defendant–Appellee.

PRESENT: Hon. B.D. PARKER, Hon. REENA RAGGI and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

We assume the parties' familiarity with the underlying facts and the procedural history of the case. Plaintiff–Appellant Michael Carter enrolled in a Ph.D. program in psychology at the University of Connecticut in 1991. In 2000, after completing his coursework, Carter submitted his doctoral dissertation which was rejected. In October 2000 he was terminated from the Ph.D. program because of the length of time it took for him to complete his degree. Carter, who is African–American, believed that other students had taken longer to complete their dissertations (including a white student who took fourteen

years) and decided to bring a civil rights suit against the University.

In November 2001, Carter retained an attorney to prosecute his claim against the University, Ronald J. Piombino, and called him intermittently to check on the progress of his case. Piombino repeatedly assured Carter that his lawsuit had been filed, but in February 2004 Carter found out that Piombino had not done so. Following an investigation by Connecticut's Statewide Grievance Committee, Piombino was reprimanded and forced to disgorge Carter's retainer.

In September 2004, Carter hired his present attorney, who filed a complaint alleging a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and certain common law torts. The United States District Court for the District of Connecticut (Underhill, *J.*) dismissed the complaint as time-barred, but granted Carter leave to re-plead to allege facts demonstrating that the statute of limitations should be equitably tolled. Carter filed an amended compliant which was again dismissed on statute of limitations grounds. This appeal followed.

We review the district court's decision *de novo*. *Lattanzio v. Deloitte & Touche LLP,* 476 F.3d 147, 153 (2d Cir.2007). The parties do not dispute that Connecticut's three-year personal injury statute of limitations, Conn. Gen.Stat. § 52–577, applies. In federal civil rights actions such as this that borrow state statutes of limitations, state tolling rules generally apply. *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). After analyzing Connecticut law, the district court determined that § 52–577 was not subject to equitable tolling. *Carter v. Univ. of Conn.,* No. 3:04 cv 1625(SRU), 2006 WL 2130730, at *2–3, 2006 U.S. Dist. LEXIS 51734, at *6–9 (D.Conn. July 28, 2006). Carter does not challenge this conclusion.

■ Instead, Carter argues that he should be granted equitable tolling under "federal tolling principles" since his attorney committed misconduct and he acted with due diligence. Carter's argument is beside the point because Connecticut's tolling principles apply. "[G]aps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law ... Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute." *Hardin,* 490 U.S. at 538–39, 109 S.Ct. 1998 (internal citations omitted). Since the goals of Title VI would not be thwarted by the application of Connecticut's tolling principles, Carter's argument fails. He is not, however, left without any remedy for his former attorney's misconduct. Carter remains free to pursue a malpractice claim against the attorney, through which he could presumably seek damages arising from the loss of his ability to prosecute his Title VI claim.

■ Carter also argues that under Connecticut law, the continuing course of conduct doctrine should "suspend" § 52–577 in light of the University's offer, at the time of his December 2000 termination from the doctoral program, to readmit him and in light of his status as a "continuous registration student" at the University. According to the Connecticut Supreme Court:

> in order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. ... Where we have upheld a finding that a duty continued to exist

after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

*Neuhaus v. DeCholnoky*, 280 Conn. 190, 201–02, 905 A.2d 1135, 1143 (Conn.2006) (internal quotations and citations omitted).

Neither Carter's amended complaint nor his affidavit refer to any wrong, relationship, or contact with the University after it terminated him. Therefore the continuing course of conduct doctrine has no application. We have considered Carter's other contentions and find them meritless. For all the foregoing reasons, the district court's opinion is AFFIRMED.