In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2982

HARLIS WOODS,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-cv-08456—**Ruben Castillo**, *Judge*.

ARGUED FEBRUARY 28, 2013—DECIDED MARCH 25, 2013

Before MANION, KANNE, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Harlis Woods brought this suit
under 42 U.S.C. § 1983 against the Illinois Department
of Children and Family Services ("IDCFS"), Lutheran
Child and Family Services of Illinois, Inc. ("LCFS"),
and various individuals. He alleged that defendants vio-
lated his due process rights when, twenty years
earlier, they took him into state custody and failed
to protect him from childhood sexual abuse he suffered

at the hands of another child. The district court dismissed the suit as untimely because Woods failed to bring his claim within two years of its accrual, rejecting Woods's contention that the twenty-year limitations period applicable in Illinois to personal injury claims based on childhood sexual abuse applied. We affirm.

## I

The complaint alleges that in March 1991, IDCFS removed Woods from his biological parents' home and placed him in a residential treatment facility; he was seven years old at the time. In August 1991, Woods was placed in Lutherbrook Children's Center ("LCC"), which was operated by defendant LCFS. Prior to his placement, LCFS had received multiple reports of sexual abuse among male residents at LCC due to a lack of staff supervision. In October 1991, it was discovered that Woods, by then eight years old, had been sexually abused by a thirteen-year-old LCC resident. Woods was removed from LCC by court order and hospitalized a few weeks for evaluation, but he never received psychological counseling to address the abuse.

In 2004, at age twenty-one, Woods committed acts of sexual violence, which he alleges were manifestations of the psychological injury resulting from the sexual abuse he experienced at LCC. He is currently serving a lengthy state prison sentence for three convictions of aggravated criminal sexual assault. *See People v. Woods*,

No. 1-11-0946, 2012 WL 6962127, at *1, ¶¶ 1-2 (Ill. App. Ct. Dec. 11, 2012).

On November 21, 2011, Woods, pro se, brought this § 1983 claim against defendants, alleging that they had violated his due process rights by failing to protect him from sexual abuse while in state custody. *See K.H. Through Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) (once state removed child from parents' custody because of sexual abuse, the child had a constitutional right not to be placed with foster parents that the state knew or suspected to be abusive); *see also Slade v. Bd. of Sch. Dirs. of City of Milwaukee*, 702 F.3d 1027, 1030 (7th Cir. 2012) (state employees may be "held liable under the due process clause for injuries inflicted by private persons" where "the state has by exercising custody over a person deprived him of the ability to protect himself and has thus endangered him"). The district court dismissed the complaint as untimely but without prejudice; it then requested[1] counsel to represent Woods and file either an amended complaint or a motion to reconsider.

On March 23, 2012, Woods's counsel filed a motion to reconsider, contending that the statute of limitations applicable to Woods's § 1983 claim is the twenty-year limitations period contained in the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2, not the two-year statute of limitations for general personal injury actions, 735 ILCS 5/13-202. The district court denied

---

[1] The request was pursuant to 28 U.S.C. § 1915(e)(1).

Woods's motion to reconsider, 880 F. Supp. 2d 918 (N.D. Ill. 2012), and Woods appealed.[2]

## II

As a threshold matter, IDCFS argues that it is not a proper party because it is a state agency entitled to immunity from damages suits. U.S. Const. amend. XI; *see, e.g., Tucker v. Williams*, 682 F.3d 654, 658-59 (7th Cir. 2012). (It also points out, correctly, that it is not a "person" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).) Although IDCFS also insists that Woods's complaint was properly dismissed as untimely, the Eleventh Amendment issue must be addressed at the outset because it is jurisdictional. *See Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Davidson v. Bd. of Governors of State Colls. & Univs. for W. Ill. Univ.*, 920 F.2d 441, 442 (7th Cir. 1990).

The district court deemed IDCFS's Eleventh Amendment argument waived as inadequately developed. 880 F. Supp. 2d at 920 n.2. But the State's contention should have been addressed. First, although IDCFS's argument was somewhat perfunctory and appeared in

---

[2] Although the duties counsel accepted in response to the court's request terminated upon denial of the motion to reconsider, counsel also voluntarily pursued this appeal on Woods's behalf. We thank Beata G. Brewster and Steven A. Levy, of the law firm Goldberg Kohn Ltd., for their volunteered efforts and exceptional representation of Mr. Woods.

a footnote, this is a fairly routine and straightforward defense when a state agency is sued for damages, and we fail to see what further development the district court felt it needed. *Cf. Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913-14 (7th Cir. 2011) (qualified-immunity defense not waived, even though defendants' argument "left much to be desired"). Second, Woods did not contest this argument below and on appeal concedes that IDCFS is not a proper party. Finally, there is little sense in a district court deeming an Eleventh Amendment defense waived for inadequate development because the state can invoke it at any time during the litigation. *See Edelman v. Jordan*, 415 U.S. 651, 658 (1974). We will, consequently, modify the district court's judgment of dismissal, *see, e.g.*, *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795-96 (7th Cir. 2002), to reflect dismissal of the claim against IDCFS for lack of jurisdiction. That takes care of IDCFS, but several other defendants remain, so we press on.

**III**

Federal law does not provide every rule of decision for adjudicating a civil rights claim. *Burnett v. Grattan*, 468 U.S. 42, 47 (1984). To fill in the gaps, Congress has instructed courts to engage in a three-step process: (1) look to federal law "so far as such laws are suitable to carry [the relevant civil rights laws] into effect"; (2) if federal law is silent, look to the "common law, as modified and changed by the constitution and statutes," of the forum state; but (3) apply state law only if it "is

not inconsistent with" federal law. 42 U.S.C. § 1988(a); *Burnett*, 468 U.S. at 47-48. Federal law does not provide a limitations period for § 1983 claims, so courts look to the forum state's law. *Burnett*, 468 U.S. at 49; *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). Turning to state law, of course, raises the question of which state law to apply, for states often have numerous statutes of limitations applicable to different types of legal claims.

Prior to *Wilson v. Garcia*, 471 U.S. 261 (1985), the Supreme Court had directed lower courts to apply the state statute of limitations governing the state-law claim that was most analogous to the particular § 1983 claim being litigated. *See Burnett*, 468 U.S. at 49-50; *Bd. of Regents of the State Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980); *cf. Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462 (1975) (applying same rule to § 1981 claim). This case-by-case approach spurred time-consuming litigation collateral to the merits of § 1983 claims, which in turn injected a great deal of uncertainty into the law. *Wilson*, 471 U.S. at 272-74. Furthermore, this approach lacked any semblance of uniformity because different limitations periods applied to the various § 1983 claims brought in a particular state; indeed, where a plaintiff asserted more than one claim under § 1983, different statutes of limitations might apply in the same case. *Id.* at 274. The justification for the case-by-case approach was also sketchy because the unique nature of a § 1983 claim meant that it had "no precise counterpart in state law," so trying to find the perfect analogy in state law (and the accompanying policies of repose) was a battle of futility. *Id.* at 271-72. Concluding

that these results were inconsistent with Congress's intent, the *Wilson* Court jettisoned the case-by-case approach and held that § 1988(a) "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 275. The Court also held that § 1983 claims are best characterized as personal injury claims and, consequently, that courts should apply the state limitations period governing personal injury claims to all § 1983 claims. *Id.* at 276-80.

*Wilson* did much to streamline this area of law, but it did not address what a court should do when a state has multiple limitations periods applicable to different categories of personal injury claims. In *Owens v. Okure*, 488 U.S. 235 (1989), the Court was asked to determine which of two New York limitations periods applied to § 1983 claims: the one-year period applicable to certain enumerated intentional torts, or the three-year residual statute of limitations applicable to personal injury claims not otherwise covered by a specific statute of limitations. *Id.* at 237-38. The Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249-50. Adopting the alternative approach under which courts would look to the limitations periods applicable to intentional torts, the Court explained, would lead to the same problems that predated *Wilson*, as courts would be required to determine which one of several intentional torts was most analogous to a particular § 1983 claim. *Id.* at 243-

44 & n.8; *see also id.* at 248 ("In *Wilson*, we expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." (citation omitted)).

In line with *Wilson* and *Owens*, this court has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13-202. *See, e.g.*, *Ray*, 662 F.3d at 772-73; *Ashafa v. City of Chicago*, 146 F.3d 459, 461-62 (7th Cir. 1998); *Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992); *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989) (per curiam). Here, the parties agree that Woods's claim accrued some time in 2004, when he "discovered" his psychological injury, and on the basis of their agreement we assume without deciding that 2004 is the proper accrual date. *But see Wallace v. Kato*, 549 U.S. 384, 388-91 (2007) ("accrual occurs when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief,'" and this is true "even though the full extent of the injury is not then known or predictable" (brackets omitted) (quotation marks and citations omitted)). Although the district court provided him an opportunity to do so, Woods has not attempted to seek refuge under any relevant Illinois tolling provisions. *Cf. Hardin v. Straub*, 490 U.S. 536, 539 (1989). Thus, the two-year limitations period expired in 2006, rendering Woods's 2011 complaint five years too late.

Woods concedes that his claim is untimely if the two-year limitations period applies, but he maintains that

the twenty-year limitations period contained in the Illinois Childhood Sexual Abuse Act, 735 ILCS 5/13-202.2, should apply because his claim involves childhood sexual abuse.[3] He argues that the Supreme Court, in a comment in *Owens* (specifically, footnote 13), recognized an exception to the *Wilson* rule, specifically, that the general personal injury limitations period does *not* apply when it would be inconsistent with the federal interests underlying § 1983, which are to compensate victims and to deter officials from abusing their power, *e.g.*, *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978). A limitations period that does not afford a reasonable time for a § 1983 plaintiff to bring suit, he continues, is inconsistent with federal interests. He then marshals case law, legislation, and social commentary to show that two years is an unreasonable time in which to require a victim of childhood sexual abuse to bring suit. At the very least, he argues, he is entitled to an evidentiary hearing in the district court at which he can adduce evidence to show that two years is an unreasonable limitations period, hence inconsistent

---

[3] Recall that Woods is not alleging that governmental actors sexually abused him but that they failed to protect him from sexual abuse at the hands of a ward of the state when they had a duty to protect; Illinois courts have interpreted the Illinois Childhood Sexual Abuse Act to give rise to a cause of action against nonabusers based on their failure to protect, *Doe v. Hinsdale Twp. High Sch. Dist. 86*, 905 N.E.2d 343, 346-47 (Ill. App. Ct. 2009); *Hobert v. Covenant Children's Home*, 723 N.E.2d 384, 386 (Ill. App. Ct. 2000).

with federal interests, for claims involving childhood sexual abuse. We are not persuaded.

It is true that § 1988(a) allows application of state law only when it is not inconsistent with federal law. And it may be that a limitations period can be so short as to be inconsistent with federal interests. *See Owens*, 488 U.S. at 251 n.13 (citing *Burnett*, 468 U.S. at 61 (Rehnquist, J., concurring in the judgment)). *But cf. Wilson*, 471 U.S. at 279 ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983. General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today . . . . It is most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.").

But in light of *Wilson* and *Owens*, the determination whether a limitations period is consistent or not with federal interests must be made with reference to *all* § 1983 claims, not a particular subset, because all § 1983 claims within a single state are to be governed by the same limitations period. Put differently, to prevail on his theory, Woods must show that the two-year limitations period applicable to all § 1983 claims in Illinois is inconsistent with the federal interests of compensation and deterrence generally. *See Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993); *cf. Robertson*, 436 U.S. at 593 ("A

state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation."). He has not done so. And nothing can be gained from an evidentiary hearing because his focus is too narrow—he does not suggest that he would or could show that a two-year limitations period is inconsistent with the federal interests underlying § 1983 claims generally. Even had Woods requested an appropriately focused hearing, it is doubtful he could show that two years is an unreasonably short time for § 1983 plaintiffs in general to bring their claims. *See Burnett*, 468 U.S. at 61 (Rehnquist, J., concurring in the judgment) ("The willingness of Congress to impose a 1-year limitations period in 42 U.S.C. § 1986 demonstrates that at least a 1-year period is reasonable."); *McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991) (one-year limitations period not inconsistent with federal interests); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1484 (11th Cir. 1989) (same).

At oral argument, counsel for Woods asserted that although *Owens* and *Wilson* emphasize the federal interests of uniformity, certainty, and the minimization of unnecessary litigation, those interests should not trump deterrence and compensation, which are the chief goals of § 1983. Furthermore, the argument goes, footnote 13 in *Owens* should be understood as implicit recognition that other interests may override uniformity. We think this over-reads the footnote. The Court simply left open the question whether a one-year limitations period was consistent with federal interests; it did not need to reach the issue because it

had held that the three-year period applied. *See Owens*, 488 U.S. at 251 n.13. Importantly, adhering to *Wilson*, the *Owens* Court was deciding which of two limitations periods applied to *all* § 1983 claims brought in New York; had it decided on the one-year period and proceeded to examine the question left open in footnote 13, it would have been considering whether one year was too short for § 1983 claims generally.

Contrary to counsel's assertion, there *is* a reason that the federal interests of uniformity, certainty, and the minimization of unnecessary litigation trump deterrence and compensation—the Supreme Court has interpreted § 1988(a) to so require. The *Wilson* Court deemed the benefits of the bright-line rule to outweigh the costs of abandoning the case-by-case approach, and it was aware that its rule might shorten the period in which a § 1983 plaintiff could bring suit, relative to what a state legislature might provide arguably analogous state tort claimants. *Cf. Wilson*, 471 U.S. at 284-85 (O'Connor, J., dissenting) ("[T]he Court's decision effectively fore-closes legislative creativity on the part of the States. Were a State now to formulate a detailed statutory scheme setting individualized limitations periods for various § 1983 claims, drawing upon policies regarding the timeli-ness of suits for assault, libel, written contract, employ-ment disputes, and so on, the Supremacy Clause would dictate that the blunt instrument announced today must supersede such legislative fine-tuning. Presum-ably, today's decision would pre-empt such legislation even if the State's limitations period in a given case were *more* generous than the tort rule that the Court

today mandates invariably shall apply." (emphasis in original)). And the *Owens* Court was aware that some states had special limitations periods applicable to intentional torts involving childhood sexual abuse: after explaining that "[a] rule endorsing the choice of the state statute of limitations for intentional torts would be manifestly inappropriate," 488 U.S. at 243, because it would cause confusion over the "choice among multiple intentional tort provisions," *id.* at 244, the Court listed examples of the various statutes governing different intentional torts, and among those examples were statutes of limitation governing actions based on childhood sexual abuse, *see id.* at 244 n.8.

Notwithstanding Woods's assertions to the contrary, in the end his argument is simply an invitation to revive the pre-*Wilson* approach of choosing a state limitations period based on which state tort claim is most analogous to a particular § 1983 claim. The underlying premise of his argument is that his particular § 1983 claim is most closely analogous to a state tort claim for personal injuries resulting from childhood sexual abuse. This is precisely what *Wilson* and *Owens* forbid.

To sum up, we reiterate our holding that the limitations period applicable to *all* § 1983 claims brought in Illinois is two years, as provided in 735 ILCS 5/13-202, and this includes § 1983 claims involving allegations of failure to protect from childhood sexual abuse, *accord Walker v. Barrett*, 650 F.3d 1198, 1205-06 (8th Cir. 2011);

*Blake*, 997 F.2d at 751[4]; *cf. Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579-80 (9th Cir. 2012). Woods filed his complaint long after the limitations period had expired, and so it was properly dismissed. His arguments for applying a different limitations period are foreclosed by Supreme Court and circuit precedent, and there is nothing that can be achieved from an evidentiary hearing.

---

[4] Woods argues that *Blake* is no longer the law of the Tenth Circuit and urges us to follow the course he believes that circuit has laid. He says that the Tenth Circuit departed from *Blake* in *Cosgrove v. Kansas Department of Social & Rehabilitative Services*, 162 F. App'x 823, 825-28 (10th Cir. 2006), when it reversed a district court's dismissal of a prisoner's § 1983 claim at the screening stage, 28 U.S.C. § 1915A, because it was not "patently clear from the face of the complaint nor rooted in adequately developed facts" that Kansas's two-year limitations period applied, rather than its three-year period governing claims of childhood sexual abuse. But, of course, it almost goes without saying that *Cosgrove*, an unpublished, nonprecedential decision, 162 F. App'x at 824 n.*, did not change the law of the Tenth Circuit. Aside from being unpublished and nonprecedential, *Cosgrove* does not mention *Wilson*, *Owens*, or even *Blake* and endorses precisely what the Supreme Court has held is not permitted—applying different limitations periods to different § 1983 claims brought in a single state. Under *Wilson* and *Owens*, the alleged facts underlying a § 1983 claim are wholly irrelevant for determining which state limitations period applies. It is also notable that, due to the unique posture in *Cosgrove*, the court did not have the benefit of briefing from the defendants.

## IV

The district court's judgment of dismissal is MODIFIED to reflect that Woods's claim against IDCFS is dismissed for lack of jurisdiction, and the judgment, as modified, is AFFIRMED.