# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 19, 2016       Decided June 24, 2016

No. 15-7039

CARLOS ALEXANDER,
APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01959)

*Donna R. Williams Rucker* argued the cause and filed the briefs for appellant.

*Gerard J. Stief* argued the cause and filed the brief for appellee.

Before: MILLETT, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

PER CURIAM: Carlos Alexander brought this disability discrimination action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, against his former employer, the Washington Metropolitan Area Transit Authority ("Authority"). The district court granted summary

judgment to the Authority on the ground that Alexander failed to come forward with sufficient evidence that he had a "disability" as defined in the Act. In so holding, however, the district court failed to properly consider the record evidence as applied to all three of the Act's alternative definitions of "disability." We accordingly reverse and remand.

## I

Alexander has suffered from alcoholism since approximately 1980. The Authority hired him in 1999 as an Automatic Train Control Mechanic Helper. In 2007, he transferred to a Communications Mechanic Helper position. One day in April 2007, Alexander's supervisor smelled alcohol on his breath. A breathalyzer test came up positive for alcohol. Shortly thereafter, Alexander was suspended and referred to the Authority's Employee Assistance Program.

Alexander returned to work in December 2007, subject to periodic alcohol tests. In January 2009, Alexander proved unable to comply with the Authority's internal Employee Assistance Program as he again tested positive for alcohol while at work. As a result, he was terminated. During the exit interview, Alexander was told that he could apply to be rehired in one year if he completed an intensive alcohol dependency treatment program. Accordingly, Alexander enrolled in the Chemical Dependency Intensive Outpatient Program at Washington Hospital Center, completing it in January 2010. He then sought to be rehired by the Authority on several occasions, three of which are the subject of his complaint. In April 2010, Alexander applied for a Communications Mechanic Helper position and received a contingent offer of employment, but was later notified that "screening/Physical ha[d] disqualified [him]." J.A. 272. Alexander submitted a second application for a

Communications Mechanic Helper position in August 2011, but was informed a few days later that he had again been disqualified. Two months later, Alexander applied for an Automatic Fare Collections Mechanic Helper position, but was not hired.

On September 13, 2010, after the Authority's first refusal to rehire him, but before the second and third decisions, Alexander filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that the Authority had violated the Americans with Disabilities Act ("ADA") by not rehiring him because of his history of alcoholism. The Authority denied the allegation and claimed Alexander was not hired because he had falsified information on his medical form and failed to produce documentation of his completed alcohol dependency treatment program. On March 28, 2012, the EEOC issued a Letter of Determination finding reasonable cause to believe that the Authority's decision not to hire Alexander violated the ADA because evidence indicated that Alexander "is a qualified individual with a disability" who had not falsified his medical form and who had adequately documented his completion of a treatment program. J.A. 261–262. When conciliation failed, the EEOC issued Alexander a "right to sue" letter on September 7, 2012.

Alexander filed his complaint in the United States District Court for the District of Columbia, alleging violations of the Rehabilitation Act and the ADA, although Alexander later dismissed his ADA claim. The district court subsequently granted summary judgment for the Authority. The court held that Alexander's claim was timely filed, but that Alexander had not established that he is "an individual with a disability within the meaning of the [Rehabilitation] Act" because he failed to point to any evidence in the record

"demonstrat[ing] that his alcohol dependency substantially limits at least one of his major life activities." J.A. 305.

## II

We review *de novo* the district court's grant of summary judgment, and will affirm only if the record demonstrates both that "'there is no genuine issue as to any material fact,' and that 'the moving party is entitled to a judgment as a matter of law.'" *Solomon v. Vilsack*, 763 F.3d 1, 8 (D.C. Cir. 2014) (quoting *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010)).

### A. Disability Discrimination

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Act expressly incorporates the liability standards set out in the ADA. *See id*. § 794(d); 29 C.F.R. § 1614.203(b). Accordingly, to prevail on a claim of discrimination under the Rehabilitation Act, a plaintiff must first establish that he has a "disability" as defined in the ADA. *See* 29 U.S.C. §§ 705(9), 705(20)(B). The ADA provides a three-pronged definition of the term: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). In September 2008, Congress enacted the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, to ensure "a broad scope of protection" for individuals under the ADA (and consequently, the Rehabilitation Act), 42 U.S.C. § 12101 note. Of particular relevance here, Congress

directed that "[t]he definition of disability * * * shall be construed in favor of broad coverage * * *, to the maximum extent permitted by the terms [of the ADA]."  42 U.S.C. § 12102(4)(A).

The district court ruled that Alexander had failed to establish that he is disabled within the meaning of the Rehabilitation Act because he failed to come forward with sufficient evidence showing that his alcoholism "substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A).    The district court's analysis, however, focused on only the first definition of "disability"—an actual and substantially limiting "physical or mental impairment"— and failed to consider whether Alexander met either the record-of-impairment or regarded-as-impaired definitions of disability.   Compounding the error, the district court also applied an outmoded statutory standard, overlooking material changes to the governing law worked by the 2008 Amendments.

The district court's central error was in failing to consider at all whether the Authority "regarded" Alexander as "having * * * an impairment," 42 U.S.C. §§ 12102(1)(C),   or discriminated against him for having a "record of * * * impairment," *id.* §12102(1)(B), even though Alexander's claim implicated both definitions.    The district court explained that, in its view, "Alexander does not allege either as the basis for his claim."  J.A. 304.  But both Alexander's complaint and his opposition to summary judgment make clear that he was also alleging discrimination on both record-of and regarded-as grounds.  *See, e.g.*, J.A. 11 (Complaint ¶ 24) (alleging Alexander was informed that "he was not eligible to be rehired because of his previous unsuccessful completion of the Employee Assistance Program," *i.e.*, his second violation of the Authority's alcohol policy and

resulting termination); *id.* at 12 (Complaint ¶ 35) (claiming that "WMATA does not have a written policy pertaining to non-compliance with the Employee Assistance Program," but nevertheless the Authority's "representatives were not willing to rehire him because they feared that rehiring him would open the gates for others"); *id.* at 15–16 (Complaint ¶¶ 65, 67) (alleging that the Authority "was aware that [Alexander] suffered from alcoholism" prior to his non-selection and "intentionally discriminated against [him] because of his disability"); *id.* at 56 (Opp. to Mot. for S.J. 16 ("Alexander Opp.")) (stating that Alexander "was not hire[d] because of his history of a disability"); *id*. at 57 (Alexander Opp. 17) (same).

Considering those alternative definitions was critical. In particular, after the 2008 Amendments, the regarded-as prong has become the primary avenue for bringing the type of discrimination claim that Alexander asserts. *See* 29 C.F.R. § 1630.2(g)(3) ("Where an individual is not challenging a covered entity's failure to make reasonable accommodations[,] * * * it is generally unnecessary to proceed under the 'actual disability' or 'record of' prongs * * *. In these cases, the evaluation of coverage can be made solely under the 'regarded as' prong of the definition of disability[.]"). Critically, while the district court's decision relied heavily on what it deemed to be insufficient evidence that Alexander's alcoholism substantially limited any major life activity, the 2008 Amendments eliminate any such requirement for a regarded-as claim. *See* 42 U.S.C. § 12102(3) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subject to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life

activity.") (emphasis added); *see also* 29 C.F.R. § 1630 app. at 380 (2009) ("'Any individual who has been discriminated against because of an impairment * * * should be bringing a claim under the third prong of the definition which will require no showing with regard to the severity of his or her impairment.'") (quoting Joint Hoyer-Sensenbrenner Statement on the Origins of the ADA Restoration Act of 2008, H.R. 3195 at 4); 29 C.F.R. § 1630.2(g)(3) (regarded-as claim "does not require a showing of an impairment that substantially limits a major life activity[.]").

Instead, Alexander needed only to show that the Authority took "a prohibited action against [him] because of an actual or perceived impairment." 29 C.F.R. § 1630.2(*l*)(2). There is no dispute in this case that Alexander's alcoholism is an "impairment" under the ADA and the Rehabilitation Act. *See* J.A. 306 (District Court Op. 310) (finding that Alexander adequately "provid[ed] evidence that he has an impairment (alcohol dependency) that affects major life activities"); *see also* H.R. Rep. No. 485, 101st Cong., 2d. Sess. pt. 2, at 51 (1990) ("physical or mental impairment" under the ADA includes "drug addiction and alcoholism"); *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1167 (1st Cir. 2002) ("There is no question that alcoholism is an impairment for purposes of * * * analysis under the ADA.") (listing cases).

In addition, Alexander came forward with sufficient evidence from which a reasonable jury could conclude that the Authority refused to hire him because of his alcoholism. Alexander's deposition testimony and sworn affidavit attest that he was told by Authority representatives at the time of his termination that he would be eligible for rehire in one year's time if he successfully completed a substance abuse program, a contention supported by the Authority's written drug and alcohol policy itself, as well as a letter from a union official

about the conversation. There also is no dispute that Alexander successfully completed the Washington Hospital Center's alcohol dependency treatment program and waited a year before applying to be rehired. Yet when he did apply, the Authority told him that he "couldn't come back * * * because [he] failed the [Employee Assistance] program that got [him] fired in the first place, and Metro don't have revolving doors." J.A. 90; *see also id.* at 107 ("They said I couldn't come back because I failed the [Employee Assistance] program and got terminated.").

Alexander further testified that, after applying for the Automatic Fare Collections Mechanic Helper position, he was pulled out of the line to take the practical entrance exam by Rita Watkins, an Authority human resources representative, who "remember[ed]" him as "the one that can't have safety-sensitive positions." J.A. 99, 289; *see also id.* at 106–107 ("[S]he told me she remembered me as the one that was disqualified and couldn't come back because of safety-sensitive something."). But Alexander also produced evidence suggesting that Automatic Fare Collections Mechanic Helper was not a safety-sensitive position. *See id.* at 106 (testifying that Watkins told him that some positions in the Automatic Fare Collections department "are non-safety"). *Compare id.* at 266 (listing job code 5226 for the Automatic Fare Collections Mechanic Helper position), *with* Alexander Opp. at Exhibit 14, *Alexander v. WMATA*, 82 F. Supp. 3d 388 (D.D.C. 2015) (No. 1:12-cv-01959-TSC), ECF No. 22 (not including job code 5226 on "List of Safety Sensitive Functions").

In addition, Alexander testified that, during a meeting with Dr. Lisa Cooper-Lucas, the Authority's medical office manager and the person who made the decision to disqualify him, she offered shifting reasons for the Authority's refusal to

rehire Alexander. She initially said that Alexander had been disqualified for lying on his medical questionnaire form by marking a box indicating he had never been in a drug treatment program. When Alexander challenged that accusation, Cooper-Lucas asserted that the real reason for disqualification was that Alexander needed to wait two years, not one, before he could be rehired. When Alexander countered that version with the information he received from the union and other Authority personnel, Cooper-Lucas "got mad or upset" and upped the requirement to three years. J.A. 93. Alexander questioned "how can it take three if it don't take two[?]," which led Cooper-Lucas to declare that he "can't come back at all." *Id.* Alexander further testified that Cooper-Lucas's boss later informed him that, despite "no policy preventing [him] from coming back," he would not be rehired "because it will open the floodgates for people like [him]." *Id.* at 96.

Deposition testimony from Authority witnesses likewise supports Alexander's claim. Cooper-Lucas confirmed that she presided over the Authority's Employee Assistance Program at the time of Alexander's participation, and thus was aware of Alexander's alcoholism before he was terminated. J.A. 200–202. She admitted she had no reason to believe that Alexander was drinking at the time of his rehire applications "to the point where there is a concern about his ability to function in a safety-sensitive program," *id.* at 222, and that his physical exam revealed no evidence of drug or alcohol use. Yet she insisted that Alexander was nonetheless "too much of a risk for a safety sensitive position," *id*. at 218–219. Both Cooper-Lucas and Romina Parahoo, a human resources official, also conceded that they could not recall any employee who had been terminated for violating the substance abuse policy and was later rehired.

Further, the record calls into question the non-discriminatory reasons that the Authority asserted for refusing to rehire Alexander. Cooper-Lucas testified that she disqualified Alexander because he had falsified information on his pre-employment medical form and lacked required documentation showing he had been assessed by a substance abuse professional trained on U.S. Department of Transportation regulations. But she had no recollection of ever providing either of those reasons to Alexander. Moreover, the record indicates how a reasonable jury could conclude that Alexander's allegedly false answer on the medical form could have been accurate: he checked "no" for whether he had ever had "*drug* rehab/counseling." Alexander Opp. at Exhibit 17, *Alexander*, 82 F. Supp. 3d 388 (No. 1:12-cv-01959-TSC), ECF No. 22 (emphasis added). *See also* J.A. at 92 ("And I said [to Cooper-Lucas], if I marked that, then that had to be a mistake, an oversight, because I said I was in your [Employee Assistance] program."); *id*. at 232 (counsel pointing out to Cooper-Lucas that the form "says specifically drug"). Alexander also showed that nothing in the Authority's drug and alcohol policy requires that substance abuse programs be approved by the federal Department of Transportation. *See id.* at 281 ("The applicant must also provide evidence of having successfully completed <u>an alcohol or drug treatment program</u>.").

Beyond those errors with respect to the regarded-as definition of disability, the district court further erred by enforcing too strict a definition of the "substantially limits" showing needed for Alexander's actual-disability and record-of-impairment claims. Under the 2008 Amendments, the substantially-limits requirement "is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), or to require "extensive analysis," *id.* § 1630.2(j)(1)(iii). *See also* 42 U.S.C. § 12101 note (one purpose of the 2008

Amendments is "to convey congressional intent that the standard created by the Supreme Court * * * for 'substantially limits' * * * ha[d] created an inappropriately high level of limitation necessary to obtain coverage under the ADA").

Given the legal standard prescribed by the 2008 Amendments, we hold that Alexander came forward with sufficient evidence to permit a reasonable jury to find that his alcoholism "substantially limit[ed]" major life activities "compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). For example, Alexander stated in response to interrogatories that "sleeping, daily care activities[,] and depression" are the "major life activity or activities * * * affected by [his] disability." J.A. 255. An expert medical report from Dr. Roberta Malone provides additional detail, explaining that Alexander has a "debilitating diagnosis of alcoholism," *id.* at 246, and his condition "dramatically [a]ffects major life activities, including the ability to care for himself, walking, concentrating, and communicating," *id.* at 248. The report catalogs Alexander's long and difficult history of alcohol dependency, including that Alexander had a "stated daily history of consuming a six-pack of beer or half a pint of rum"; that "[h]e also noted periods of time during which he could not recollect events following his consumption of alcohol (consistent with blackouts), as well as a more general deterioration in his ability to sleep regularly"; that he previously continued to use alcohol "despite a clearly declared motivation to re-commit himself to his work, and even in the face of the considerable occupational difficulties it presented"; and that he met the DSM-IV-TR criteria of "[i]mportant social, occupational, or recreational activities given up or reduced because of drinking." *Id.* at 247–248. The report further indicates that Alexander had been assessed a DSM-IV-TR Axis V "Level of

function" score of "55-60 (occupational difficulty)." *Id.* at 246.[*]

In sum, the district court erred in granting summary judgment because a reasonable jury considering the proffered evidence could conclude both that Alexander has a qualifying "disability" under all three definitions of the term in the Rehabilitation Act, and that the Authority refused to rehire him because of his disability.

## B.  Statute of Limitations

As an alternative ground for affirmance, the Authority maintains that Alexander's Rehabilitation Act claim is barred by the statute of limitations. *See Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970) ("The prevailing party may * * * assert in a reviewing court any ground in support of [its] judgment, whether or not that ground was relied upon or even considered by the trial court."); *MBIA Ins. Corp. v. F.D.I.C.*, 708 F.3d 234, 247 n.8 (D.C. Cir. 2013) (an appellee may "urge in support of a decree any matter appearing in the record, although [its] argument may involve an attack upon the reasoning of the lower court or an insistence upon a matter overlooked or ignored by it") (quoting *Freeman v. B & B Assoc.*, 790 F.2d 145, 150–151 (D.C. Cir. 1986)) (alteration in original).  We review *de novo* the district court's finding that Alexander's claim was timely, and conclude that the district court rightly rejected the Authority's argument. *See, e.g.*, *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 432 (D.C. Cir. 2004).

Because the Rehabilitation Act does not specify its own limitations period, courts generally "'borrow' one from an

---

[*] At the time of the report, Alexander had been in remission for about four years.

analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies." *Spiegler v. District of Columbia*, 866 F.2d 461, 463–464 (D.C. Cir. 1989). Alexander argues that the District of Columbia's three-year statute of limitations for personal injury claims should apply. The Authority argues for the one-year statute of limitations of the District of Columbia Human Rights Act. *See Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012) (applying the Human Rights Act limitation period to discrimination claims under the Rehabilitation Act).

We need not decide which limitations period applies because Alexander's claim was timely either way. If the three-year personal-injury limitations period applies, the complaint was filed on December 5, 2012, which was well within three years of the Authority's rehiring denials in June 2010, August 2011, and October 2011.

If the Human Rights Act limitation applies, there is no dispute that the complaint came more than one year after those adverse rehiring decisions. But generally when a federal court borrows a limitations period from state law, that law's tolling provisions come along as part of the package. That is because, "[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975); *see also Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue."). The Human Rights Act provides that "[t]he timely filing of a complaint with the [District of Columbia Office of Human Rights], or under the administrative procedures established by the Mayor * * * shall toll the running of the

statute of limitations while the complaint is pending." D.C. CODE § 2-1403.16(a). Importantly, that tolling provision is also "triggered by the timely filing of a complaint with the EEOC" pursuant to a worksharing agreement between the EEOC and Office of Human Rights. *Jaiyeola*, 40 A.3d at 369.

The Authority argues that the Supreme Court's decision in *Johnson* forecloses Alexander's reliance on the tolling provision. In that case, the Court held that a plaintiff's pursuit of an EEOC charge for a Title VII claim did not toll the limitations period for his 42 U.S.C. § 1981 claim, noting that the remedies available under Title VII and under Section 1981, "although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson*, 421 U.S. at 461.

This case is very different from *Johnson* for two reasons. First, the ADA claim that Alexander exhausted is not "separate, distinct, and independent," but instead is closely akin to Alexander's Rehabilitation Act claim. The Rehabilitation Act, in fact, incorporates many of the standards and regulations set by the ADA, *see* 29 U.S.C. § 794(d); 29 C.F.R. § 1614.203(b), including provisions that govern Alexander's claim in this case, such as the definition of "disability," *see* 29 U.S.C. §§ 705(9)(B), 705(20)(B). Second, the relevant state statute of limitations in *Johnson* did *not* have any tolling provision, and so the Court deferred to the State's judgment "in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." 421 U.S. at 464. This case is exactly the opposite because District law *mandates* tolling.

The Authority also argues that tolling should not apply because Alexander was not required to exhaust administrative

remedies before bringing suit under Section 504 of the Rehabilitation Act. But nothing in the Human Rights Act limits tolling to mandatory exhaustion. Indeed, the Human Rights Act itself does not inflexibly command exhaustion, and its tolling provision applies generally to any time period "while [an administrative] complaint is pending." *See* D.C. CODE § 2-1403.16; *cf. Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 396 (D.C. 1991) (under the Human Rights Act, "[a]n aggrieved individual may elect to file a complaint with [the Office of Human Rights] *or* in any court of competent jurisdiction") (emphasis added).

Accordingly, Alexander's complaint was timely filed under both the three-year and one-year limitations periods provided by District law.

## III

The judgment of the district court is reversed and the case is hereby remanded for further proceedings consistent with this opinion.

*So ordered.*